IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

WENDY M. DUREN,

                         Plaintiff,                OPINION AND ORDER

     v.

                                                08-cv-468-bbc

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                         Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This is an action for judicial review of an adverse decision of the Commissioner of Social Security brought pursuant to 42 U.S.C. § 405(g).  Plaintiff Wendy Duren applied for Disability Insurance Benefits and Supplemental Security Income under Title II and Title XVI of the Social Security Act, codified at 42 U.S.C. §§ 416(i), 423(d) and 1382(c)(3)(A), alleging that she was disabled because of anxiety, depression and low back pain and later, neck and left elbow pain.  After a hearing, an administrative law judge determined that although plaintiff had severe impairments, she remained capable of performing light or sedentary work, provided she did not have to have significant contact with co-workers. Relying on vocational expert testimony, he concluded that plaintiff was not disabled because

1

there were a significant number of jobs in the economy that plaintiff could perform with her limitations.

Plaintiff, who is now proceeding *pro se*, seeks reversal of the commissioner's determination that she is not disabled. Although plaintiff's briefs are not a model of clarity, the gist of her argument is that she is incapable of performing the types of work identified by the administrative law judge because of constant pain, Vicodin use and left hand problems. In addition, she challenges the administrative law judge's evaluation of the favorable opinions from her treating doctor, Eric Hamburg, and treating psychiatrist, Clemens Schmidt.

Having carefully reviewed the entire administrative record, the administrative law judge's decision and the parties' submissions, I am persuaded that the administrative law judge was correct to deny plaintiff's applications. Although the administrative law judge erred in determining that Hamburg had found plaintiff capable of performing light work and might have erred in failing to include any left hand limitations in plaintiff's residual functional capacity, these errors did not affect the outcome of the case. In addition to various light jobs, the vocational expert identified 2,365 sedentary order clerk jobs that plainly could be performed by someone without full use of her non-dominant hand. Accordingly, I will affirm the commissioner's decision.

The following facts are drawn from the administrative record (AR):

2

FACTS

A. Background and Procedural History

Plaintiff was born on July 8, 1959.  AR 37.  She completed the eleventh grade and then got her General Equivalency Diploma.  On August 1, 1997, she obtained her Certified Nursing Assistant degree.  AR 448.  Plaintiff had past work as a factory laborer, nursing assistant, housekeeper, office worker, waitress and banquet server.  AR 448, 470-71.

Plaintiff applied for disability insurance benefits and supplemental security income on January 23, 2001, alleging that she was disabled because of anxiety, depression and low back pain.  Her claim for disability insurance benefits was initially denied because she did not have enough quarters of insurance coverage.  Her application for supplemental security income was denied because she was found not disabled.  AR 35-36.  On September 15, 2001, plaintiff reapplied for disability benefits after meeting the necessary number of quarters for coverage, alleging disability since October 1, 2000.  That application was escalated to the reconsideration level along with her Supplemental Security Income claim.  AR 36.

After the local disability agency denied her application, plaintiff requested a hearing on April 21, 2002.  A hearing was scheduled on March 15, 2007, before Administrative Law Judge Robert L. Bartlet.  (Why it took five years for a hearing to be scheduled is not clear from the record.)  The March 15 hearing was postponed because plaintiff had just retained

3

a lawyer, who needed time to prepare for the hearing.  AR 36.  The hearing was rescheduled and held on June 1, 2007.  AR 444.

Plaintiff appeared with a lawyer, who submitted some additional medical records. The administrative law judge heard testimony from plaintiff, a neutral medical expert in psychology and a neutral vocational expert.  On June 19, 2007, the administrative law judge issued a written decision, finding plaintiff not disabled.  AR 35-46.  This decision became the final decision of the commissioner on June 5, 2008, when the Appeals Council denied plaintiff's request for review.  AR 7-9.

## B. Medical Evidence

1. 2001-2005

a. Douglas C. Varvil-Weld, Ph.D.

On June 26, 2001, Douglas C. Varvil-Weld, Ph.D., performed a consultative psychological evaluation of plaintiff in connection with her application for disability benefits. Varvil-Weld found that plaintiff had a depressive disorder with secondary anxiety and a personality disorder.  He concluded that plaintiff could have some difficulty in remembering and carrying out complex instructions, tolerating the stress of the workplace effectively for long periods of time and persisting effectively in the work environment.  AR 289-91.

b.  Roger Rattan, Ph. D.

On July 19, 2001, state agency psychologist Roger B. Rattan competed a Psychiatric Review Technique form for plaintiff, finding that she had a depressive disorder with anxiety. AR 349.  He concluded that in spite of her mental limitations, plaintiff was capable of performing unskilled work.  He noted that there was evidence in the record showing that plaintiff had been most recently employed for almost 12 months where she was deemed a very good worker with an excellent overall performance rating, good interaction abilities and a good attendance record.  AR 355.

There are no medical records or consultative reports in the file from the period 2002-2005.

2.  2006-2007

a.  Dr. Kevin Weber

Plaintiff developed neck and arm pain in early 2005.  Magnetic resonance imaging showed cervical spondylosis and disc rupture at C5-6 and C6-7.  After conservative management failed, plaintiff opted to undergo a cervical diskectomy and fusion at the two affected levels.  Dr. Kevin Weber performed the surgery on March 13, 2006.  AR 403.

After the surgery, plaintiff took Vicodin for the pain.  On May 25, 2006, Weber indicated that her fusion was healing, the hardware was intact and the bone grafts looked

5

good.  AR 432.  Weber attributed plaintiff's slower healing to the fact that she continued to smoke.  AR 433.

On July 18, 2006, plaintiff told Weber that she had increased pain between her shoulder blades, some numbness and tingling in both hands and headaches.  Plaintiff was using Vicodin on occasion and continued to smoke.  Weber noted that the fusion looked good but healing was slow because of plaintiff's tobacco use.  He was of the opinion that plaintiff's upper back pain was muscular in nature.  He gave plaintiff a trigger point injection in her upper back.  AR 429.

Plaintiff saw Weber on January 23, 2007.  She said she continued to have pain in the upper back, headaches and tingling and numbness down the left arm. Weber noted that plaintiff had had an EMG on January 17, 2007, that showed mild ulnar neuropathy at the left elbow with no cervical radiculopathy.  An MRI of the cervical spine showed post-operative changes with no disc herniation above or below the fusion that could explain plaintiff's symptoms.  A repeat x-ray of plaintiff's cervical spine showed that the hardware was intact and the bone grafts were healing, albeit slowly.  Weber indicated again that the slow healing of the cervical fusion was related to plaintiff's tobacco use and that it was not causing  plaintiff's symptoms.  He gave plaintiff a trigger point injection in her upper back for the thoracic pain.  He also diagnosed her with cubital tunnel syndrome (compression of

the ulnar nerve) of the left elbow and told plaintiff that she could consider surgery for ulnar nerve transfer.  AR 425-26.

On April 24, 2007, plaintiff reported that she still had some discomfort in the back of her neck, headaches and numbness and tingling into the left hand.  X-rays showed new healing at the lower part of the cervical fusion and intact hardware.  Plaintiff had full range of motion in the left elbow, but tenderness and a positive Tinel's sign (a test that detects nerve irritation) over the left ulnar nerve.  Weber gave her a steroid injection near the ulnar nerve and talked to her again about  surgery to relieve the pressure over the nerve.  AR 420.

b.  Dr. Clemens Schmidt

In September 2006, plaintiff was seen for an outpatient psychiatric evaluation by Dr. Clemens Schmidt, a staff psychiatrist for the Sauk County Department of Human Services. Plaintiff reported a longstanding history of recurrent depression for which she had taken various medications.   She said she had become quite depressed recently because of the ongoing pain she had had since undergoing cervical fusion in March of that year.   In addition, she reported that in August, her husband of 10 years had left her and her sons, aged 10 and 7, were living with him.  Schmidt noted that plaintiff was oriented in all spheres and had normal thought content but appeared to have recurrent major depressive disorder

that was not responding well to antidepressants.  Schmidt started plaintiff on Tranxene, Cymbalta and Lamictal.  AR 407-08.

On November 3, 2006, Schmidt saw plaintiff, who reported that the medications were working pretty well.  He increased the dosages.  AR 411.  However, on December 1, 2006, plaintiff called Schmidt and left a message complaining that her medications were not working and that she wanted him to change them.  AR 419.  On January 10, 2007, plaintiff left Schmidt's nurse a message indicating that she was unemployable because of her physical and mental condition and she was a "liability" to potential employers because she was on Vicodin.  Plaintiff requested a letter from Schmidt to this effect.  AR 418.

On January 11, 2007, Schmidt wrote a letter indicating that plaintiff suffered from a severe depressive disorder that had been resistant to treatment.  He indicated that plaintiff reported that she also had physical problems relating to disc protrusion in her cervical spine. Schmidt concluded that because of these problems, plaintiff was unable to be gainfully employed for one year.  AR 415.

Schmidt saw plaintiff on January 22, 2007.  Plaintiff reported that her medications had been working but that she continued to have lots of family conflict.  He renewed plaintiff's prescriptions for Tranxene, Cymbalta and Lamictal.  AR 417.

c.  Dr. Eric Hamburg

On January 20, 2006, Dr. Eric Hamburg wrote a letter stating that plaintiff was physically and emotionally unable to work for the next month.  AR 412.  (Apparently, Hamburg had been plaintiff's treating physician since at least June 2004.  However, plaintiff did not submit any treatment notes from Hamburg until her case reached the Appeals Council.  Those records are summarized at AR 13-14, but the actual treatment notes are not in the record.)

On January 25, 2007, Hamburg completed a Medical Examination and Capacity Form for plaintiff.  He listed diagnoses of chronic depression, chronic neck pain and left cubital tunnel syndrome with a poor prognosis. He concluded that plaintiff could:

- lift and carry 10 pounds occasionally but no weight frequently;

- stand, walk or sit six hours in an eight hour work day; and

- use her left hand only in a limited way because of ulnar neuropathy.

Hamburg noted that plaintiff's medications caused drowsiness.  He indicated that plaintiff had low frustration tolerance, difficulty working around others and difficulty making decisions, although he indicated that plaintiff's psychiatrist would be able to provide more details about plaintiff's mental limitations.  AR 401-02.

9

C. <u>Hearing Testimony</u>

1. <u>Plaintiff</u>

Plaintiff testified that she had last worked as a waitress in January 2005.  AR 449.
She testified that she left that job because of constant pain in her neck.  AR 450.  She relied
on food stamps and the help of her 21-year-old son to cover her expenses.

Plaintiff said that she was bi-polar, had "ups and downs" and sometimes became
aggressive towards her boyfriend or son.  AR 450.  She testified that she saw psychiatrist
Schmidt every three months and psychologist Joel Petty every two weeks.  (There are no
progress notes from Petty in the record.)  She took Lamictal, Cymbalta, Tranxene for her
mental disorders and Vicodin for her neck and arm pain.  The Vicodin, which she took up
to three times a day, "knocked her out."  AR 458-59.

Plaintiff testified that she had received injections in her left elbow.  AR 456.  (It
appears that plaintiff offered more testimony about her left arm condition, but that page of
the transcript is missing from the record.)  Plaintiff said her doctor had told her that her left
arm condition would not improve without surgery.  AR 458.

Plaintiff testified that she was able to stand for a half hour, walk two blocks and sit
in one position for a half hour to an hour.  AR 456, 459, 466.  She testified that she visited
her daughter, helped her care for her four-month-old baby, watched television and did some
cooking.  AR 462.  Her son did all the other chores around the house.  She went to the

10

grocery store but brought someone with her to carry everything.  Plaintiff said she was unable to stand and do dishes for half an hour because of the pain in her neck and pain shooting down her left arm.

2.  Psychologist Allen Hauer

        Allen Hauer, a psychologist, was present for plaintiff's testimony and testified as a neutral medical expert.  He testified that plaintiff had a low- to mid-grade depressive disorder characterized primarily by episodic irritability, episodic anxiety, agitation, negative mood and feelings of pessimism.  AR 465.  He concluded that plaintiff was not impaired in her activities of daily living because she lived independently, cared for her children and was able to plan, organize and carry out her own activities in an independent and self-directed manner.  AR 465.  Hauer testified that plaintiff had a mild impairment in social functioning because her irritability interfered somewhat with her social interactions.  AR 456.  He also testified that plaintiff had a mild impairment in maintaining concentration, persistence or pace because of her episodic depression but that she had experienced no episodes of decompensation of extended duration.  AR 466.

        Hauer testified that plaintiff had a fair ability to relate to co-workers but a good ability to relate to supervisors and interact appropriately with the public.  In addition, he found that plaintiff had a good ability to deal with changes in a routine work setting, use

11

good judgment in the workplace, maintain concentration or attention to work tasks, perform at a consistent pace and maintain attendance and punctuality.  AR 467-68.

### 3.  Vocational Expert Catherine Anderson

Turning to Catherine Anderson, the vocational expert, the administrative law judge asked what jobs, if any, could be performed by an individual of plaintiff's age, education, work experience and the residual functional capacity to perform light and sedentary work with very little contact with co-workers.  Anderson testified that the individual could work as a light stock clerk or order clerk (4,001 jobs in Wisconsin), light housekeeper (6,683 jobs in Wisconsin), sedentary order clerk (2,365 jobs in Wisconsin) and cashier (11,872 jobs in Wisconsin).  AR 471.  (Although relevant portions of the vocational expert's testimony are missing from the administrative record, the administrative law judge summarized her testimony in his decision.  AR  41.)

### D.  The Administrative Law Judge's Decision

In reaching his conclusion that plaintiff was not disabled, the administrative law judge performed the required five-step sequential analysis.  20 C.F.R. §§ 404.1520, 416.920.  At step one, he found that although plaintiff had worked at a number of different jobs after October 2000, the date her disability allegedly began, her limited earnings from those jobs

12

did not rise to the level of substantial gainful activity.  He noted, however, that in 2000, plaintiff had earned more than $10,000, which would constitute substantial gainful activity. AR 37-38.  In addition, he noted that plaintiff had failed to report this job on her 2001 application and then later, when confronted by the social security administration, had been "purposefully vague" about her work activity.  Id.

With respect to the medical evidence, he noted that the time period at issue was significant, spanning plaintiff's alleged onset date of October 2000 through the date of the hearing.  After reviewing the medical evidence in the record, the administrative law judge found at step two that plaintiff had severe impairments of status post cervical fusion with some residual neck pain, mild left cubital tunnel syndrome, an anxiety disorder and depression.  AR 45.  Noting that there was a notable gap in treatment from 2001 to 2006, the administrative law judge acknowledged the possibility that the gap might have been the result of the delay in the scheduling of plaintiff's hearing and that plaintiff may well have received treatment during that time.  Nonetheless, he observed, neither plaintiff nor her representative had offered any treatment records for this time period.  AR 40.  He also noted that plaintiff's spine and elbow impairments had developed rather recently (in approximately March 2005) and did not date back to plaintiff's alleged onset date of October 2000.

At step three, the administrative law judge found that plaintiff did not have an impairment or combination of impairments that met or medically equaled any impairment

13

listed in 20 C.F.R. 404, Subpart P, Appendix 1. AR 45. He noted that although plaintiff had had a slow recovery from her March 2006 cervical fusion, she would have been able to perform "lesser exertional activities" within 12 months after the surgery. He also noted that if plaintiff was ever to have surgery on the left elbow, that recovery period also would not last the 12 continuous months necessary to establish disability. In addition, he noted that plaintiff's elbow impairment involved the non-dominant hand, was deemed "mild" on objective testing and plaintiff had declined surgery, all of which suggested that plaintiff was "not all that bothered by it." AR 42-43.

The administrative law judge concluded that plaintiff retained the residual functional capacity to perform unskilled sedentary to light level work where there would be very little contact with co-workers. AR 42. The administrative law judge noted that plaintiff had acknowledged on activity questionnaires submitted with her application for benefits and during her 2001 evaluation with Varvil-Weld that she had done dishes, laundry, cleaning, childcare and cooking, which were consistent with some degree of light work. In addition, she had performed jobs after her alleged onset date that were consistent with some degree of light work. AR 43. He also noted that Hamburg had indicated that plaintiff could lift 10 pounds, stand/walk six hours and sit six hours with some limited use of the left hand, "which would allow for a wide range of light and sedentary work from a physical standpoint." AR 42.

14

With respect to mental limitations, the administrative law judge accepted Hauer's testimony that plaintiff's degree of limitation was mild and that her overall ability to handle the demands of unskilled work was good, provided she had limited contact with co-workers because of her reported irritability around others.  AR 41.  He noted that the state agency also had found that plaintiff could perform unskilled work.  AR 42.  The administrative law judge rejected the opinion of plaintiff's psychiatrist, Schmidt, that plaintiff was disabled because of her physical impairments and her severe depression, which Schmidt indicated was "resistant to treatment."  The administrative law judge found that Schmidt's opinion was inconsistent with Schmidt's own treatment notes, which indicated that plaintiff's medications were working.  He also noted that Schmidt had seen plaintiff only twice before he wrote the letter setting forth his opinion.  AR 40.

Relying on the testimony of the vocational expert, the administrative law judge found that an individual of plaintiff's age, education, work experience and residual functional capacity could perform a significant number of jobs exiting in the national economy, namely select stock clerk, housekeeper, order clerk and cashier jobs, and therefore, plaintiff was not disabled.  AR 46.

15

OPINION

A.  <u>Standard of Review</u>

It is difficult to discern from plaintiff's submissions the precise reasons she thinks the administrative law judge was wrong to deny her applications for social security benefits. Construing plaintiff's complaint and briefs liberally, I make out the following arguments: 1) plaintiff was denied access to reports from consultative examiners hired by the Social Security Administration; 2) the administrative law judge erred in rejecting the favorable opinions from Hamburg and Schmidt; and 3) plaintiff's left hand weakness and Vicodin use prevent her from working.

The standard by which a federal court reviews a final decision by the commissioner is well settled:  the commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence."  42 U.S.C. § 405(g).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971).  When reviewing the commissioner's findings under § 405(g), the court cannot reconsider facts, reweigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge.  <u>Clifford v. Apfel</u>, 227 F.3d 863, 869 (7th Cir. 2000).  Thus, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the commissioner.  <u>Edwards</u>

16

v. Sullivan, 985 F.2d 334, 336 (7th Cir. 1993).  Nevertheless, the court must conduct a "critical review of the evidence" before affirming the commissioner's decision, id., and the decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review."  Steele v. Barnhart, 290 F.3d 936, 940 (7th Cir. 2002).  When the administrative law judge denies benefits, he must build a logical and accurate bridge from the evidence to his conclusion.  Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001).

### B. Access to Medical Reports

In her complaint, plaintiff asserts that she was denied access to reports from consultative examiners hired by the Social Security Administration.  According to plaintiff, she saw Dr. Douglas Varvil-Weld on April 25, 2008 and an "orthopedic specialist" who took x-rays of her neck and lower back.  Because the date on which plaintiff states she saw Varvil-Weld post-dates the hearing, I can only assume that plaintiff must have filed a new application for social security benefits and that the consultative examinations were related to that application.  That later application, however, is not the subject of this case.  The issue the court must decide is whether the administrative law judge was correct to deny plaintiff's 2001 applications for disability insurance benefits and supplemental security income.  In making that determination, this court is limited to examining the evidence that was before the administrative law judge at the time he made his decision.  Eads v. Secretary of Dep't.

17

of Health & Human Services, 983 F.2d 815, 817 (7th Cir. 1993) (stating that ALJ "cannot be faulted for having failed to weigh evidence never presented to him").  Evidence developed after the date of the administrative law judge's decision may support a new application for disability benefits, but it does not affect the outcome of plaintiff's past application.

## C.  Treating Physicians' Opinions

Although plaintiff has focused on her current condition in her complaint and briefs, she also attached copies of the following documents to her complaint:  her lawyer's letter to the Appeals Council; Schmidt's January 11, 2007 letter indicating that plaintiff was disabled for a duration of one year; and Hamburg's January 25, 2007 Medical Examination & Capacity Form.  Construing plaintiff's complaint liberally, I infer that she is contending that the administrative law judge should have accepted Schmidt's and Hamburg's reports, as argued by her lawyers in their brief to the Appeals Council.  AR 11-12.

Under the social security regulations, a treating physician's opinion is entitled to "controlling weight" if it is well supported by clinical findings and not inconsistent with the other substantial evidence in the record.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). When, however, the record contains well supported contradictory evidence, the treating physician's opinion "is just one more piece of evidence for the administrative law judge to weigh," taking into consideration the various factors listed in the regulation.  Hofslien v.

18

Barnhart, 439 F.3d 375, 377 (7th Cir. 2006).  These factors include the number of times the

treating physician has examined the claimant, whether the physician is a specialist in the

allegedly disabling condition, how consistent the physician's opinion is with the evidence as

a whole and other factors.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  An administrative

law judge must provide "good reasons" for the weight he gives a treating source opinion, id.,

and must base his decision on substantial evidence and not mere speculation.  White v.

Apfel, 167 F.3d 369, 375 (7th Cir. 1999).

1.  Dr. Schmidt

        The administrative law judge explained that he was giving little weight to Schmidt's

opinion that plaintiff was disabled because 1) the opinion was inconsistent with Schmidt's

treatment notes, which indicated that plaintiff's symptoms were controlled with medication;

2) it was inconsistent with the opinions of Hauer and the non-examining state agency

consultants, who were of the opinion that plaintiff was capable of performing unskilled work

in spite of her mental impairments; and 3) it was of questionable reliability, insofar as

Schmidt had offered it after seeing plaintiff on only two occasions.  These were good reasons

to discount Schmidt's opinion.  When a treating source has not seen a person frequently

enough to have obtained a "longitudinal picture" of her impairment, 20 C.F.R. §

404.1527(d)(2)(ii), or provides an opinion inconsistent with his treatment notes or other

19

evidence in the record, § 404.1527(d)(4), the administrative law judge may give the opinion less weight. In this case, it was entirely reasonable for the administrative law judge to question the reliability of Schmidt's opinion in light of the treatment notes, which indicated that plaintiff's symptoms were improved with medication, and with Schmidt's having seen plaintiff only twice before deeming her disabled. On the other hand, Hauer's opinion was consistent with that of the state agency physicians and the overall record, which failed to document disabling mental limitations. I find no error in the manner in which the administrative law judge weighed the opinions from the mental health specialists and no basis to reverse his conclusion that plaintiff retained the mental residual functional capacity to perform unskilled work requiring little contact with coworkers.

2. Dr. Hamburg

Hamburg's report describing plaintiff's physical limitations is more problematic for two reasons. First, it is not entirely clear how much weight the administrative law judge gave it. On the one hand, the administrative law judge appeared to give little weight to the report, insofar as he described it as a "questionable and extremely limiting checklist form for a welfare department." AR 42. At the same time, however, he suggested that even if Hamburg's limitations were accepted, it "would allow for a wide range of light and sedentary work from a physical standpoint." Id. The administrative law judge went on to find that

20

plaintiff was capable of performing light and sedentary work.  Accordingly, he appears to have given Hamburg's opinion at least some weight.

Second, as plaintiff's lawyer pointed out to the Appeals Council, the administrative law judge's determination that Hamburg's limitations would allow for "a wide range of light and sedentary work" was inaccurate.  Under the regulations, "light" work is defined as that which involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. §§ 404.1567(b), 416.967(b).  Hamburg concluded that plaintiff could lift and carry at most 10 pounds *occasionally*, which, contrary to the administrative law judge's finding, would rule out light work.

Apart from his erroneous interpretation of Hamburg's report, there is scant evidence in the record to support the administrative law judge's conclusion that plaintiff was capable of performing light work after she developed neck problems in approximately March 2005.  Hamburg was the only physician who provided an assessment of plaintiff's work abilities.  The only other evidence the administrative law judge cited as evidence of plaintiff's ability to perform light work were plaintiff's work and daily activities reports from 2001, which preceded the onset of her cervical spine problems.  At the hearing, plaintiff described a lifestyle more restricted than it had been around the time when she filed her application for benefits, testifying that she quit working in January 2005 because she had constant pain in her neck, was no longer able to carry her own groceries and had problems standing and

21

washing dishes for half an hour.  Accordingly, to the extent the administrative law judge relied on pre-2005 activities as a basis for finding that plaintiff was capable of performing light work at all times through the date of his decision, that finding is not supported by substantial evidence.

These errors are not necessarily fatal, however, because the administrative law judge found that plaintiff could perform sedentary work.  Work is sedentary if it requires primarily sitting and "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  20 C.F.R. §§ 404.1567(a), 416.967(a).  At the Appeals Council, plaintiff argued that even sedentary work was not possible under Hamburg's limitations because Hamburg found that plaintiff was "incapable of lifting and carrying any amount of weight."  AR 12.  That is not what Hamburg said.  He said she was unable to lift and carry any weight "frequently," but could lift and carry up to 10 pounds "occasionally."  AR 401.  This would allow for the occasional carrying of light objects contemplated in the definition of sedentary work.

What is of more concern is Hamburg's opinion that plaintiff had only "limited" use of her left hand because of her ulnar neuropathy.  According to Social Security Ruling 96-9p, a "significant" limitation of a person's ability to handle and work with small objects with both hands substantially reduces the sedentary job base because "most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions."  When an

22

individual's manipulative limitation is less significant, "especially if the limitation is in the non-dominant hand," says the ruling, "it may be useful [for the administrative law judge] to consult a vocational resource." Id.

In this case, the administrative law judge did not include any manipulative limitations in his residual functional capacity assessment or corresponding hypothetical to the vocational expert.  The commissioner argues that this omission was proper because the medical record failed to document any limitations in plaintiff's ability to use her left arm and hand.  It is true that there is no evidence in the record indicating that plaintiff's neuropathy caused her to drop things or that she had difficulty with fingering or manipulating small objects, and the record contains no progress notes from Hamburg documenting these or other left hand limitations.  On the other hand, plaintiff did report pain, numbness, tingling and weakness in the left arm and hand to Weber, and Weber made clinical findings consistent with those reports.

The administrative law judge discounted the significance of plaintiff's ulnar nerve syndrome, noting that it involved plaintiff's non-dominant hand.  However, Social Security Ruling 96-6p indicates that even limitations in the non-dominant hand may have *some* effect on the sedentary job base, depending on the severity of the limitation.  The administrative law judge failed to recognize this possibility, instead making the sweeping assertion that a person with the limitations identified by Hamburg still could perform a "wide range of

23

sedentary work."  In doing so, the administrative law judge stepped outside his bounds and performed the job of the vocational expert.

Nonetheless, the administrative law judge also noted that plaintiff's condition was deemed mild on objective testing and she had declined surgery, both of which indicated that the condition did not cause any severe limitations.  Both of these were adequate reasons to find that plaintiff had only mild symptoms from her ulnar nerve syndrome, particularly in the absence of evidence indicating that she had problems with grasping or holding onto objects.  At the same time, however, the administrative law judge made the seemingly inconsistent finding at step two of the sequential evaluation that plaintiff's cubital tunnel syndrome was "severe," implying that plaintiff's left hand problems were *more* than *de minimis*.  See Bowen v. Yuckert, 482 U.S. 137, 159 (1987) (O'Connor, J., concurring) ("Only those claimants with slight abnormalities that do not significantly limit any 'basic work activity' can be denied benefits [at step two]."); 20 C.F.R. § 404.1521(a) ("severe" impairment is one that "significantly limit[s] [the claimant's] ability to do basic work activities").   Further, in determining a claimant's residual functional capacity, the administrative law judge must evaluate all limitations that arise from medically determinable impairments, even those that are not-severe.  Golembiewski v. Barnhart, 322 F.3d 912, 918 (7th Cir. 2003).  Thus, the administrative law judge would have been on more solid ground

had he included at least some limitation on plaintiff's left hand in his assessment of plaintiff's residual functional capacity.

In any case, even if the failure to include a left hand limitation was error---and I am not certain it was---the lack of such a limitation had no bearing on the outcome of this case. The vocational expert identified the job of "order clerk" as unskilled, capable of being performed at the sedentary level and not requiring significant contact with co-workers. At step five of the sequential evaluation, the commissioner can meet his burden by relying on information contained in the <u>Dictionary</u>.  Soc. Sec. Ruling 00-4p.  Although I was unable to find a <u>Dictionary</u> citation for this job in the record, my own search of the <u>Dictionary</u> found only one possibility, that of "Order Clerk, Food and Beverage," #209.567-014.   The <u>Dictionary</u> describes this job as follows:

> Takes food and beverage orders over telephone or intercom system and records order on ticket:  Records order and time received on ticket to ensure prompt service, using time-stamping device. Suggests menu items, and substitutions for items not available, and answers questions regarding food or service. Distributes order tickets or calls out order to kitchen employees. May collect charge vouchers and cash for service and keep record of transactions. May be designated according to type of order handled as Telephone-Order Clerk, Drive-In (hotel & rest.); Telephone-Order Clerk, Room Service (hotel & rest.).

DOT #209.567-014.  No small assembly or other tasks requiring bilateral manipulation are required.  Rather, the job plainly appears to require use primarily of the dominant hand.  In short, the numbness, tingling and weakness that plaintiff described in her non-dominant arm

25

and hand would not prevent her from performing the tasks required of this job.  Accordingly, although the hypothetical to the vocational expert would have been more complete had it included plaintiff's left arm pain, numbness and tingling, I am satisfied that it would be pointless to remand this case.  <u>Keys v. Barnhart</u>, 347 F.3d 990, 994 (7th Cir. 2003) (harmless error principles apply to administrative decisions); <u>Donahue v. Barnhart</u>, 279 F.3d 441, 444 (7th Cir. 2002) (administrative law judge's failure to include claimant's personality disorder and shortcomings in concentration in hypothetical to vocational expert harmless where expert "did not name jobs in which steady concentration or sociability is essential").

In sum, the administrative law judge did not err in discounting the opinion of plaintiff's treating psychiatrist, Schmidt.  With respect to Hamburg's opinion, the administrative law judge's analysis was not perfect, but in the end it did not affect the outcome of plaintiff's application for disability benefits.  Substantial evidence in the record supports the conclusion that plaintiff can perform the job of sedentary order clerk, even though she cannot lift up to 10 pounds frequently and has some problems with her left hand because of cubital tunnel syndrome.

### D.  <u>Medication Side Effects</u>

Plaintiff asserts that she is disabled because she continues to take Vicodin for neck pain, which makes her a "liability" to employers.  As the commissioner points out, however,

the issue is not whether plaintiff is employable, but whether there are any jobs that she is capable of performing.

At the hearing, plaintiff testified that she takes Vicodin "as needed," sometimes up to 3 times a day.  According to plaintiff, the medication "knocks her out."  Under the social security regulations and rulings, an administrative law judge must consider a claimant's use of medications and any side effects in determining whether she retains the ability to work. 20 C.F.R. § 404.1529(c)(3); Soc. Sec. Ruling 96-7p.  Although the administrative law judge acknowledged plaintiff's testimony concerning her Vicodin use, he did not say whether he was discounting it or whether he was finding that plaintiff could work in spite of it. However, he did make a general finding that plaintiff's allegations regarding her limitations were not "totally credible" for reasons stated in his decision.  AR 45.  Although all of those reasons are not crystal clear, one fact the administrative law judge found significant was that plaintiff had lied about her work history when she filed her 2001 application for benefits and then was evasive when confronted about it.  Given this lack of candor on the part of plaintiff in the past, I cannot say that it was patently wrong for the administrative law to question the candor of plaintiff's testimony, including her testimony about the side effects of medication.  Schmidt v. Astrue, 496 F.3d 833, 843 (7th Cir. 2007) (because administrative law judge is best situated to assess witness testimony and demeanor, court will not disturb credibility determinations as long as they are supported by record and not patently wrong).

27

Further, plaintiff has not pointed to anything in the record that corroborates her suggestion that the side effects from Vicodin impair her ability to perform unskilled work. Plaintiff's medical records show that she took Vicodin only "occasionally," AR 429, and was advised by Weber to try over-the-counter Tylenol. Plaintiff never asked for a different medication or complained to her treating physicians that she could not work because of the side effects of the Vicodin. She said only that she could not find a job because she was a "liability" to employers because of the Vicodin. AR 418. Although it would have been better for the administrative law judge to have addressed plaintiff's alleged drowsiness from Vicodin more comprehensively, I am satisfied that his failure to do so was harmless.

E. Sentence Six Remand

Finally, I have considered whether a basis exists to remand this case for consideration of additional evidence, namely, the additional records from Hamburg that plaintiff's lawyer submitted to the Appeals Council. As noted previously, the records are not in the administrative record but are summarized in plaintiff's letter to the Appeals Council. AR 13-14.

Under the sixth sentence of § 405(g), a district court may remand a case to the commissioner for consideration of additional evidence, but only if the evidence is new, material and not previously submitted for good cause. Jens v. Barnhart, 347 F.3d 209, 214

28

(7th Cir. 2003). These criteria are not met in this case. To justify a remand, "new" means "'not in existence or available to the claimant at the time of the administrative hearing.'" Schmidt v. Barnhart, 395 F.3d 737, 742 (7th Cir. 2005) (quoting Perkins v. Chater, 107 F.3d 1290, 1296 (7th Cir.1997)). Clearly, the records from Hamburg were in existence at the time of the hearing, insofar as they record medical visits that occurred years before the hearing. Further, there is nothing from which I can conclude that plaintiff had good cause for failing to submit these records until after the hearing. Her lawyer submitted other records at the hearing, which indicates that she was aware that plaintiff's file was not complete, but failed to submit these additional records from Hamburg or ask the administrative law judge to hold the record open for a short time so that she could do so.

Finally, the additional records are not material. "Material" means that "there is a reasonable probability that the Commissioner would have reached a different conclusion had the evidence been considered." Perkins, 107 F.3d at 1296 (internal citations and quotations omitted). The summary indicates that Hamburg saw plaintiff for a variety of problems, including headaches, sinusitis, anxiety, depression, epigastric pain and neck and arm pain, both before and after her cervical fusion. Overall, the records add little to the evidence that was before the administrative law judge, which showed that plaintiff had made similar complaints of anxiety and depression to Schmidt and of neck and arm pain to Weber. Although the records provide a clinical backdrop for Hamburg's otherwise unsupported

29

opinions, the administrative law judge did not reject Hamburg's opinions on the ground that they lacked clinical support.  Rather, as I have already noted, he relied on Hamburg's medical capacity report in fashioning plaintiff's residual functional capacity.


F.  Conclusion

In sum, although the administrative law judge did not write a perfect opinion, substantial evidence in the record supports his determination that in spite of her impairments, plaintiff retained the ability to perform a substantial number of jobs that exist in the regional economy.  Further, I note that any misgivings I have about the administrative law judge's opinion apply only to the period after plaintiff developed her cervical spine and ulnar nerve problems.  It is plain that before that time, plaintiff was capable of performing unskilled light work, as demonstrated by her actual work activities, her daily activities during that time and the lack of any objective evidence that would support a more restrictive residual functional capacity.

ORDER

IT IS ORDERED that the decision of defendant Michael J. Astrue, Commissioner of

Social Security, is AFFIRMED and plaintiff Wendy M. Duren's appeal is DISMISSED.  The

clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 1ˢᵗ day of June, 2009.

BY THE COURT:

/s/

_____

BARBARA B. CRABB
District Judge

31